IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MICHAEL DEWAYNE ROBERTS,    )
                            )
        Plaintiff,          )
                            )
v.                          )    CIVIL ACTION NO.: 3:11-CV-943-WHA
                            )              [WO]
NURSE STEWART, *et al.*,     )
                            )
        Defendants.         )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

Plaintiff, Michael Roberts, files this *pro se* 42 U.S.C. § 1983 complaint against Marty
Paulson, Michael Rodgers, Kyle Burdette, Brandon Harrison, Brantley Cargill, and Ed Clark,
employees of the Opelika Police Department ("OPD Defendants"), and Linda Stewart, a
health care provider at the Lee County Detention Center.[1]  Plaintiff brings this action
complaining that in June 2011 the OPD Defendants came to his house to investigate a theft
and while being interviewed about the matter  a detective tased the top left part of his foot.
He asserts Nurse Stewart failed to provide adequate medical care for injuries he sustained

---

[1] In accordance with the prior proceedings and orders of the court, this matter has gone forward on
the amended complaint filed by Plaintiff on December 7, 2011. *See Docs. Nos. 4, 5.* Also in accordance with
the prior proceedings, opinions, and orders of the court, Plaintiff's claims against the Lee County Sheriff's
Department, the Opelika Police Department, Lee County, Alabama, the City of Opelika,  J. Jones, the
Opelika Chief of Police, and Officers Veasley and B. Jones, were dismissed prior to service of process as
were his allegations of a conspiracy and mail mishandling against the named defendants. *See Doc. Nos. 1,
7, 14.*

from the taser because of her desire to not get involved with an undocumented tasing incident. Plaintiff claims Detective Michael Rodgers violated his Fourth Amendment right to be free from unlawful searches and seizures by fabricating and falsifying evidence used to support the application for a search warrant of Plaintiff's home.  Plaintiff also alleges he was falsely imprisoned on and maliciously prosecuted for charges lodged against him based on the alleged illegal search and seizure.  For relief, Plaintiff requests dismissal of the charges against him and damages. *Doc. No. 5*.

In accordance with the orders of the court, Defendants filed answers, special reports, a supplemental special report, and supporting evidentiary material in response to the allegations in the amended complaint.  The court then informed Plaintiff that Defendants' special reports  may be treated as motions for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff took advantage of the opportunity granted to file a response to the  special reports filed by Defendants.  This case is now pending on Defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motions, the court concludes that Defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is

2

no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)).  Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for

summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children*

*and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.

## III.  DISCUSSION

*A. Injunctive Relief*

Plaintiff is no longer incarcerated having been released from custody during the pendency of this action. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) ("Past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury."). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated in the county jail, his request for injunctive relief has been rendered moot.

*B. Fourth Amendment/False Imprisonment Claims*

On June 14, 2011, Detective Rodgers received a tip from a confidential informant that stolen property could be in Plaintiff's home.  Defendants Rodgers, Paulson, Cargill, Clark, and Burdette went to Plaintiff's home to investigate the reported theft.  Defendant Burdette then left to obtain a search warrant for Plaintiff's home. After Defendant Burdette returned with the search warrant Plaintiff's residence was searched. As a result of the search, various items in Plaintiff's home were photographed and recovered. A warrant for Plaintiff's arrest was issued charging him with second degree theft. Plaintiff contends Detective Rodgers fabricated the evidence used to obtain a search warrant for his home including providing incorrect information regarding the location from where the stolen items were taken, who stole the items, and who tried to sell them, and falsely stating that Plaintiff confessed to having the stolen items in his home. The search warrant, Plaintiff claims, also failed to properly describe the property by incorrectly identifying the color of his residence and identifying the style of the residence as a duplex instead of a triplex. *Doc. No. 1* at 3.

Plaintiff's claims that the OPD Defendants procured a search warrant based on fabricated and erroneous information and that such subjected him to false imprisonment are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). During the pendency of this action, Defendants submitted a supplemental dispositive motion which shows Plaintiff pled guilty to theft of property in the second degree regarding the June 14, 2011, incident complained

of in his complaint. *Doc. No. 48 at Attachments.*  Because Plaintiff has been convicted, *Heck*

bars his claims that his theft conviction was premised on the discovery of stolen property

seized during a search of his home where the basis for issuance of the search warrant was

allegedly improper and illegal and caused him to be falsely imprisoned.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87 (footnote omitted).

In *Edwards v. Balisok*, 520 U.S. 641, 646 (1997), the Court further concluded that

an inmate's "claim[s] for declaratory [and injunctive] relief and money damages, . . . that

necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"

unless the inmate can demonstrate that the challenged action has previously been invalidated.

*Id*. at 648.  The Court determined this is true not only when a prisoner challenges the

judgment as a substantive matter but also when "the nature of the challenge to the procedures

could be such as necessarily to imply the invalidity of the judgment." *Id.* at 645.  The Court

reiterated the position taken in *Heck* that the "sole remedy in federal court" for a prisoner

challenging the constitutionality of his confinement is a petition for writ of habeas corpus. *Id*. at 644.  The Court "reemphasize[d] that . . . a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id*. at 649.

The Court recognizes that, "[b]ecause an illegal search or arrest may be followed by a valid conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, *Heck* does not generally bar such claims." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (footnotes omitted). If, however, the factual basis of a plaintiff's § 1983 claim would "inevitably undermine his conviction," then *Heck* bars the claim, even if it arises under the Fourth Amendment. *Vickers v. Donahue*, 137 F. App'x 285, 290 (11th Cir. 2005) ( per curiam) (holding that Fourth Amendment § 1983 claim premised on officer providing false information in affidavit to secure an arrest warrant was barred by *Heck* because "the factual basis for [the plaintiff's] claim . . . inevitably undermine[s] his conviction"); see also *Baxter v. Crawford*, 233 F. App'x 912, 916 (11th Cir. 2007) (per curiam) (barring under *Heck* a civil rights claim alleging illegal search and seizure for an individual convicted of a drug distribution and  possession offense since such an action would constitute a challenge to the factual basis for the conviction).

Plaintiff's claims challenging the validity of the search warrant and accompanying search and seizure and his imprisonment on the theft offense represent a  challenge to the constitutionality of his criminal conviction for theft of property in the second degree entered

against him by the Circuit Court for Lee County, Alabama, on June 27, 2012.  *Doc. No. 48,*

*Attachment* at 3.   Plaintiff, however, has not pointed to a "conviction or sentence reversed

on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized

to make such determination, or called into question by a federal court's issuance of a writ of

habeas corpus." *Heck*, 512 U.S. at 487.  Thus, a judgment in favor of Plaintiff in this cause

of action would necessarily imply the invalidity of his second degree theft conviction.

Because Plaintiff has not successfully challenged his conviction for second degree theft of

property, *Heck* precludes his § 1983 illegal search and seizure and false imprisonment claims.

*See Vickers*, 137 F. App'x at 290.   Consequently, the instant collateral attack on the

conviction in question is prohibited as habeas corpus is the exclusive remedy for a state

prisoner who challenges the validity of the fact or duration of his confinement.[3]  *Balisok*,

520 U.S. at 645; *Heck*, 512 U.S. at 481; *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973).

*C.  Malicious Prosecution Claim*

Plaintiff asserts Defendant Rodgers subjected him to malicious prosecution by

charging him with theft of property even though information from the confidential informant

indicated Plaintiff was not the person who stole the items. *Doc. No. 1* at 5.  This claim

---

[3]Even though Plaintiff is no longer incarcerated, and therefore, cannot seek habeas relief, *Heck* still operates to bar his claims for relief. Plaintiff had an adequate remedy at law because he could have pursued claims regarding the constitutionality of his theft conviction and any orders issued in his case through the state court criminal proceedings, and he has not otherwise shown he was deprived of any means or opportunity to challenge his conviction.  *See generally Doby v. Strength*, 758 F.2d 1405 (11th Cir. 1985); *see also Heck*, 512 U.S. at 490 n.10 ("the principle barring collateral attacks - a longstanding and deeply rooted feature of both the common law and our own jurisprudence - is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.").

entitles Plaintiff to no relief.

> Th[e] [Eleventh] Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood [v. Kesler]*, 323 F.3d [872, 881 (11th Cir. 2003)]; *accord Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Wood*, 323 F.3d at 882.
>
> To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; ***and*** (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood*, 323 F.3d 872, 881 (11th Cir. 2003). As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882.  The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999).

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256-57 (11th Cir. 2010) (emphasis in original).

Plaintiff has not alleged that his second degree theft conviction has been invalidated. Therefore, his claim for malicious prosecution fails to state a claim upon which relief can be granted. *See Heck*, 512 U.S. at 484 (like a common-law claim for malicious prosecution that requires the accused prove the termination of criminal proceedings in his favor, a § 1983 claim for malicious prosecution also requires as an essential element that the plaintiff prove the termination of criminal proceedings in his favor or a § 1983 cause of action does not

exist).

### D.  Excessive Force Claim

Plaintiff claims while a law enforcement official was speaking to him about searching his home on June 14, 2011,  an unidentified detective tased him "maliciously, purposely, and covertly" on the top of his left foot causing him to lose consciousness. Plaintiff contends the OPD Defendants pretended he "blacked out" but asserts his tasing wound was confirmed by medical staff at the Lee County Detention Facility.  *Doc. No. 5* at 3.

The OPD Defendants adamantly disclaim Plaintiff' allegation regarding use of a taser on June 14, 2011, and state tasers are neither used nor authorized by the Opelika Police Department.  They maintain at no time did any of the OPD Defendants tase, hit, strike, or otherwise cause Plaintiff harm regarding the incident in question. Rather, Defendants' evidence reflects Defendant Rodgers  received a phone call from a confidential informant on June 14, 2011, at approximately 12:30 p.m. advising him stolen property could be found inside Plaintiff's home. Defendant Rodgers, along with Defendants Clark, Cargill, Paulson, and Burdette, responded to the location of Plaintiff's home at which time they found no one at the residence.[4] A short time later Plaintiff arrived in his vehicle. Defendant Rodgers approached him in the driveway.  He advised Plaintiff the police department had received a report of stolen property in his home.  After Defendant Rodgers informed Plaintiff a search warrant for his home would be applied for, Plaintiff fell to the ground striking his head.

---

[4]It is undisputed Defendant Henderson was not involved in the June 14, 2011, incident.  *Doc. No. 19, Henderson Affidavit.*

13

Defendants Clark and Cargill helped Plaintiff up. He declined their offer to call rescue to check on his condition. While law enforcement officials waited on the search warrant, Defendant Rodgers observed Plaintiff appearing once again to pass out but within a few seconds he woke up and appeared normal. *Doc. No. 19, Affidavits of Cargill, Clark, Burdette, Paulson, and Rodgers*.

Plaintiff's allegation that "a detective" tased him on July 14, 2011, raises only the mere possibility of misconduct but states no viable claim under § 1983 against any of the OPD Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (observing that a complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). Plaintiff's complaint fails to identify the OPD Defendants engaged in the alleged unlawful behavior about which he complains. He does not dispute the OPD Defendants' assertion that the Opelika Police Department does not issue or authorize use of tasers and that no tasers were present at the scene of the incident and nothing in his opposition connects and/or identifies any of the OPD Defendants to the alleged constitutional violation. The mere fact that Plaintiff's description to medical personnel at the Lee County Detention Center of an injury to his foot as having been caused by a taser is insufficient to impose liability upon any of the OPD defendants.

A civil complaint must allege sufficient factual matter to show that a claim is facially plausible. Plaintiff's general allegation that "a detective" maliciously tased him is

14

insufficient.  Because nothing in Plaintiff's pleadings links any OPD Defendant to his claim

of excessive force, he has failed to state a plausible claim for relief against any of them.  *See*

*Iqbal*, 556 U.S. 678-79; *Twombly*, 550 U.S. at 555-57.  Defendants  are due to be granted

summary judgment on this claim.

*E. Medical Claim*

Plaintiff claims he received inadequate medical care from Nurse  Stewart regarding

injuries sustained from the tasing incident because she did not wish to "get involved in

undocumented tassing [sic] and refused treatment and documentation relating to incident."

*Doc. No. 5* at 3, 6.  Nurse Stewart denies Plaintiff's allegation of inadequate medical care and

asserts he received multiple examinations by medical personnel following his incarceration

at the Lee County Detention Center on June 14, 2011. *Doc. No. 43, Stewart Affidavit*.

Plaintiff's medical records demonstrate that he received medical treatment for injuries

which he informed medical personnel had been inflicted when he was tased during his arrest.

Those injuries included abrasions to the top of his left foot and a tooth knocked loose when

he fell to the ground.  Nurse Stewart examined Plaintiff for these complaints on June 21,

2011, and she put him on the list to be seen by the jail's physician.  Dr. McFarland examined

Plaintiff on June 22, 2011, and noted he had several small healing non-infected abrasions on

his left foot and elbow and a missing tooth. The physician also noted Plaintiff had receded

gums, several loosened teeth, and a missing right upper central incisor tooth which had

become looser after the alleged tasing incident and which Plaintiff pulled after he arrived at

the jail.  Dr. McFarland prescribed Plaintiff 500 mg. Naprosyn for one week and a recheck as needed in one to two weeks.  On June 24, 2011, Plaintiff was seen by a dentist who extracted three of his teeth and placed him on pain medication.  Dr. McFarland examined Plaintiff on July 19, 2011, for his complaints of injuries from a taser devise and found Plaintiff's injuries had healed with no infection.[5]  Dr. McFarland prescribed Plaintiff pain medication in response to his complaints of headaches.  On August 26, 2011, Dr. McFarland examined Plaintiff in response to his complaints of a toothache and cold symptoms and prescribed him cold medication and a muscle relaxant.   The physician next examined Plaintiff on August 30, 2011, for his complaint of a toothache.  Dr. McFarland noted Plaintiff was on the list to see the dentist and found a bit of tenderness around the tooth but no obvious abscesses.  The physician prescribed Plaintiff pain medication and an antibiotic to treat any possible infection around the tooth.  Plaintiff continued to receive medical care and treatment for various medical complaints through the end of December 2011.  His jail records reflect he was released from the Lee County Detention Center on January 4, 2012.  *Doc. No. 43, Exhs. A, C.*

　　To prevail on  a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing medical treatment

---

[5]At the July 19, 2011, examination, Plaintiff told Dr. McFarland he had been tased two weeks ago.

acted with deliberate indifference to his serious medical needs. [6]  *Estelle v. Gamble*, 429

U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182

F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030 (11th Cir. 1989); *Rogers v.

Evans*, 792 F.2d 1052 (11th Cir. 1986).  Specifically, correctional officials or prison medical

personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106.  "In articulating

the scope of this right, the Court has warned that not 'every claim by a prisoner that he has

not received adequate medical treatment states a [constitutional] violation.'"  *Mandel v. Doe*,

888 F.2d 783, 787 (11th Cir. 1989) (quoting *Estelle*, 429 U.S. at 105).  Medical treatment

violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rogers*,

---

[6]At the time the actions about which Plaintiff complains occurred, he was incarcerated in the Lee County Detention Center as a pretrial detainee.  The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution.  *Bell v. Wolfish*, 441 U.S. 520 (1979); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . .").  However, for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.  *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.").  Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment and not the Fourteenth Amendment's guarantee of due process when addressing Plaintiff's medical claim because the standard for violations of the Eighth Amendment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.  *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

792 F.2d at 1058.  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787-88 ("Mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference"); *Waldrop*, 871 F.2d at 1033 ("mere medical malpractice does [ ] not constitute deliberate indifference.").  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate on the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.").

A correctional official or health care provider may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively

18

aware, . . . and [that] the official does not 'respond[] reasonably to the risk'." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*), quoting *Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Plaintiff maintains that adequate medical care for his injuries was delayed and such delay amounted to deliberate indifference to his need for medical care. *Doc. No. 46*. Allegations that specific medical or dental procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical or dental treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Here, Plaintiff has presented no medical evidence that establishes Nurse Stewart or any other jail or medical personnel disregarded a substantial risk to his health. He also has produced no verifying evidence tending to establish any detrimental effect because of the conduct or actions of Nurse Stewart or any other jail or medical personnel or that they disregarded a substantial risk to Plaintiff's health by delaying medical and/or dental care for him. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Nurse Stewart's evidence reflects that jail medical personnel monitored, evaluated, and treated Plaintiff with regard to his complaints stemming from an alleged tasing incident in accordance with their

assessment of his condition.  There is no indication in Plaintiff's medical records he was denied necessary treatment or that he  suffered  any injury or damage due to a denial  or a deficiency in the provision of his medical care.  *Doc. No. 43, Exh. C*.

The evidence reveals Plaintiff received adequate  and appropriate medical and dental care and treatment   in connection  with his medical and dental complaints.   He has no constitutional right to  specific medical or dental treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel.  The law is settled that "[s]ociety does not expect that prisoners will have unqualified access to health care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   Thus, to the extent Plaintiff's claim is based upon his own disagreement with the jail medical staff about the course of his medical and dental treatment, as noted, such claim does not amount to deliberate indifference.  *Estelle*, 429 U.S. at 107; *Harris*, 941 F2d, at 1505.   That Plaintiff desired a different mode of treatment does not amount to deliberate indifference.  *Hamm*, 774 F.2d 1575.  In addition, whether medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545 (quoting *Estelle*, 429 U.S. at 107).

At best, Plaintiff provides nothing more than his unsubstantiated opinions about the quality of the medical and dental care he received.  His opinions are insufficient to create a genuine dispute, and his failure to support his claims with medical or scientific evidence is

fatal to them. No evidence exists tending to show that Defendant Stewart demonstrated deliberate indifference towards Plaintiff's medical and/or dental needs by delaying or withholding necessary medical or dental treatment, or by interfering with his ability to access any such necessary treatment.  Summary judgment is, therefore, due to be granted in Nurse Stewart's favor.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Defendants' motions for summary judgment (*Doc. Nos. 19, 43, 48*) be GRANTED.

2.  This case be DISMISSED with prejudice.

3.  Judgment be GRANTED in favor of Defendants;

4.  Costs be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 7, 2014**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 23rd day of June, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE